IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,465

BRYON J. KIRTDOLL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

SYLLABUS BY THE COURT

1.

The rule of law declared in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), holding that a criminal defendant's right to a jury trial under the Sixth Amendment to the United States Constitution requires that any fact which increases a sentence beyond the mandatory minimum must be submitted to a jury and proven beyond a reasonable doubt, cannot be applied retroactively to invalidate a sentence that was final when the *Alleyne* decision was released.

2.

For a K.S.A. 60-1507 motion filed in a case that was final when *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), was decided, the change in the law effected in *Alleyne* cannot provide the exceptional circumstances required to permit a successive motion or demonstrate the manifest injustice necessary to permit an untimely motion.

Appeal from Shawnee District Court; CHERYL RIOS, judge. Opinion filed May 12, 2017. Affirmed.

1

*Keith Renner*, of Renner Law Office, of Topeka, was on the brief for appellant.

*Jodi Litfin,* assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Bryon Kirtdoll appeals the district court's denial of his motion to correct an illegal sentence, in which he argued that *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), renders his judicially enhanced life sentence unconstitutional, and therefore illegal. In addition to rejecting Kirtdoll's illegality-of-sentence challenge, the district court analyzed whether the holding in *Alleyne* could be retroactively applied to Kirtdoll by construing his pleading as a K.S.A. 60-1507 motion. Using the prospective-only application of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as an analogy, the district court held that *Alleyne* could not be retroactively applied and, consequently, Kirtdoll could not obtain relief in a 60-1507 collateral attack. We affirm the denial of postconviction relief.

## FACTUAL AND PROCEDURAL OVERVIEW

Kirtdoll was convicted in 2004 of first-degree murder and sentenced to an imprisonment term of life without possibility of parole for 50 years (hard 50 life sentence). His conviction and sentence were affirmed on direct appeal, where one of the issues he raised was a constitutional challenge to the hard 50 life sentence based on *Apprendi*. *State v. Kirtdoll*, 281 Kan. 1138, 1151, 136 P.3d 417 (2006).

2

Two K.S.A. 60-1507 motions followed, one filed in 2007 and another in 2010. Both were denied by the district court and affirmed by the Kansas Court of Appeals. *Kirtdoll v. State*, No. 100,880, 2009 WL 2766290 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1094 (2010); *Kirtdoll v. State*, No. 107,385, 2013 WL 517812 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1246 (2013).

The current action began when, in 2013, Kirtdoll filed a pro se "Motion to Vacate Sentence," which appeared to be a motion to correct an illegal sentence. After hearing arguments, the district court dismissed Kirtdoll's motion. In a comprehensive written memorandum and order, the district court analyzed the merits of Kirtdoll's motion under both K.S.A. 22-3504 (correction of illegal sentence) and K.S.A. 60-1507 (postconviction collateral attack of sentence).

Although issued before this court's decision in *State v. Moncla*, 301 Kan. 549, 343 P.3d 1161 (2015), the district court reached the same conclusion regarding K.S.A. 22-3504. Specifically, the district court held that Kirtdoll's claim that his sentence was the product of an unconstitutional sentencing scheme did not fit the narrow definition of an illegal sentence for K.S.A. 22-3504 purposes, and, therefore, a motion to correct an illegal sentence could not be used to obtain the relief he sought.

The district court then, on its own, analyzed Kirtdoll's pro se motion as if it were being filed under K.S.A. 60-1507. The district court adopted the reasoning of the Kansas Court of Appeals panel in *Verge v. State*, 50 Kan. App. 2d 591, 335 P.3d 679 (2014), *rev. denied* 302 Kan. 1022 (2015). *Verge* analogized *Alleyne* to *Apprendi*, which is not retroactively applicable to a defendant through a collateral attack pursuant to K.S.A. 60-1507. 50 Kan. App. 2d at 593-94. Accordingly, the panel held that *Alleyne* cannot be retroactively applicable to cases that were final when the decision was released. 50 Kan.

3

App. 2d at 598. Therefore, because *Alleyne* did not apply to Kirtdoll, the district court did not view its change in the law as showing exceptional circumstances or demonstrating manifest injustice, so as to avoid dismissal of a K.S.A. 60-1507 motion as successive and untimely.

Kirtdoll timely appeals. We paraphrase his complaints as follows: (1) Pursuant to *Alleyne* and *State v. Soto*, 299 Kan. 102, 124, 322 P.3d 334 (2014), his hard 50 life sentence was the product of unconstitutional judicial fact-finding; (2) his collateral attack on his sentence should be considered as his third motion under K.S.A. 60-1507, which should be allowed under the exceptional circumstances and manifest injustice exceptions for successive and untimely motions; (3) the ex post facto clause would preclude a hard 50 resentencing; and (4) the finding of aggravating factors should not be reviewed for harmless error. Our determination on retroactivity will resolve all issues.

JURISDICTION

As a preliminary matter, we briefly discuss our jurisdiction to hear this case in the first instance. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013) (appellate court has duty to question jurisdiction on its own initiative). A ruling on a motion to correct an illegal sentence, where the sentence imposed for a homicide is imprisonment for life, is directly appealable to this court. K.S.A. 2016 Supp. 22-3601(b)(3). On the other hand, the initial appeal of a district court's ruling on a K.S.A. 60-1507 motion goes to the Court of Appeals. K.S.A. 2016 Supp. 60-1507(d). This case was filed as a motion to correct illegal sentence, but construed, at least partially, as a 60-1507 motion. Consequently, as a matter of judicial economy, we will consider the 60-1507 portion of the appeal as having been transferred to this court, on our own motion. See K.S.A. 20-3018(c) (Supreme Court can transfer

4

case from Court of Appeals on its own motion). In other words, we will dispose of the entire matter before us.

RETROACTIVE APPLICATION OF *ALLEYNE* HOLDING TO FINAL CASES

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Nevertheless, the sentencing scheme in Kansas prior to *Alleyne* required the district court (not a jury) to determine whether a defendant convicted of premeditated first-degree murder was to be required to serve a mandatory minimum prison term of 50 years based on the judge's finding that aggravating circumstances were not outweighed by mitigating circumstances. See K.S.A. 21-4635; *cf.* K.S.A. 2013 Supp. 21-6620 (post-*Alleyne* provisions for jury determination of hard 50 sentencing).

This court determined that such judicial fact-finding did not violate *Apprendi* because "[i]n determining whether to impose a hard 50 sentence, the sentencing court is considering the minimum sentence, not the maximum." *State v. Warledo*, 286 Kan. 927, 955, 190 P.3d 937 (2008). In other words, the statutory maximum sentence to which *Apprendi* applied was life in prison for premeditated first-degree murder and a change in the minimum sentence that must be served before parole eligibility did not change or enhance that maximum. That holding was applied to Kirtdoll on his direct appeal to deny his constitutional challenge to the hard 50 life sentence. *Kirtdoll*, 281 Kan. at 1151.

In *Alleyne*, the Supreme Court expanded the reach of the Sixth Amendment's right to a jury trial by requiring that any fact which increases a sentence beyond the mandatory minimum must also be submitted to a jury and proven beyond a reasonable doubt. 133 S. Ct. at 2162-63. This court then held that the *Alleyne* holding rendered unconstitutional the Kansas hard 50 sentencing scheme, which allowed a judge to determine facts that would

5

enhance the mandatory minimum sentence. *Soto*, 299 Kan. at 124. Thereafter, this court reversed the hard 50 sentences that had been imposed in the cases pending on appeal when *Alleyne* was decided. See *State v. Moore*, 302 Kan. 685, 710-11, 357 P.3d 275 (2015); *State v. Killings*, 301 Kan. 214, 243-44, 340 P.3d 1186 (2015); *State v. Holt*, 300 Kan. 985, 1009-10, 336 P.3d 312 (2014); *State v. Roeder*, 300 Kan. 901, 940-43, 336 P.3d 831 (2014); *State v. Hayes*, 299 Kan. 861, 867-68, 327 P.3d 414 (2014); *State v. Lloyd*, 299 Kan. 620, 643-45, 325 P.3d 1122 (2014); *State v. DeAnda*, 299 Kan. 594, 594-95, 324 P.3d 1115 (2014); *State v. Astorga*, 299 Kan. 395, 401-04, 324 P.3d 1046 (2014); *State v. Hilt*, 299 Kan. 176, 202-05, 322 P.3d 367 (2014).

For cases that were final when *Alleyne* was decided, this court has not directly considered the question of whether *Alleyne*'s new rule can be applied retroactively. We can find guidance in *Gaudina v. State*, 278 Kan. 103, 92 P.3d 574 (2004), which outlined a three-step analysis for determining whether a change in law should be applied retroactively in a criminal case under collateral attack: (1) Whether the issue is properly raised in the collateral attack; (2) whether the case was final when the new law was established; and (3) if a case was final, if an exception to the general rule against retroactive application applies. 278 Kan. at 105.

In *Moncla*, 301 Kan. at 553-54, we considered the propriety of raising the issue of retroactivity in a collateral attack brought under K.S.A. 22-3504. We held that, because the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision, a defendant cannot use a motion to correct an illegal sentence under K.S.A. 22-3504 to seek relief based on the constitutional holding in *Alleyne*. See also *State v. Dickey*, 305 Kan. 217, 221, 380 P.3d 230 (2016); *State v. Lee*, 304 Kan. 416, 418, 372 P.3d 415 (2016); *State v. Warrior*, 303 Kan. 1008, 1010, 368 P.3d 1111 (2016); *State v. Noyce*, 301 Kan. 408, 410, 343 P.3d 105 (2015). Consequently, to the extent that Kirtdoll's motion is considered a motion to correct an illegal sentence under K.S.A. 22-

3504, it would fail the first step of the *Gaudina* analysis, *i.e.*, the constitutional issue is not properly raised in the chosen form of collateral attack.

As the district court realized, however, the issue could properly be raised in a K.S.A. 60-1507 motion. See Supreme Court Rule 183 (2015 Kan. Ct. R. Annot. 271). Likewise, under the second *Gaudina* step, Kirtdoll's case was obviously final when the new law was established in *Alleyne*. "'A conviction is generally not considered "final" until (1) the judgment of conviction has been rendered, (2) the availability of an appeal has been exhausted, and (3) the time for any rehearing or final review has passed.'" *Gaudina*, 278 Kan. at 106 (quoting *State v. Heath,* 222 Kan. 50, 54, 563 P.2d 418 [1977]). As noted above, the opinion in Kirtdoll's direct appeal was filed in 2006; the opinion on his first collateral attack was filed in 2009; and *Alleyne* was filed in 2013.

In the last step of the *Gaudina* analysis, Kirtdoll must come within an exception to "the general rule . . . that a new law established after a case is final will not be applied to [that case] on collateral attack." *Drach v. Bruce*, 281 Kan. 1058, 1077, 136 P.3d 390 (2006). For the recognized exceptions to the general rule, we look to *Teague v. Lane*, 489 U.S. 288, 311-13, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), where the United States Supreme Court reaffirmed the general rule against retroactivity, especially for new constitutional rules of criminal procedure, unless the new rule falls into one of two exceptions:  (1) if the new rule places certain kinds of primary, private individual conduct beyond the reach of the lawmaking authorities to prosecute; or (2) if the new rule is a "watershed rule," the observance of which involves procedures implicit in the concept of ordered liberty.

While one might argue that *Alleyne* had a tectonic impact on criminal sentencing, we must view the "watershed" character of its new rule through the lens of precedent. First, the United States Supreme Court has suggested that any new watershed rules of

7

constitutional criminal procedure that implicate the fundamental fairness and accuracy of the criminal proceeding will be extremely rare and, indeed, a new one is yet to be discovered. *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

Further, other cases defining new rules which were at least as consequential as *Alleyne*'s new rule have not warranted the label, "watershed rule." For instance, this court held that the new rule from *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), which dramatically changed the admissibility of hearsay evidence, was not a watershed rule of criminal procedure. *Drach*, 281 Kan. at 1077-78.

The *Drach* court was persuaded by this court's prior determination in *Whisler v. State*, 272 Kan. 864, 879, 36 P.3d 290 (2001), *cert. denied* 535 U.S. 1066 (2002), which held that *Apprendi* did not create a watershed rule which would be retroactively applicable on collateral review of final cases. Given that *Alleyne* is an extension of *Apprendi*—one dealing with minimum sentences and the other dealing with maximum sentences—it would be counterintuitive, at best, to elevate *Alleyne* to the watershed rule status that was denied to *Apprendi*. As the district court noted, the Court of Appeals reasoned that the analogous nature of *Apprendi* and *Alleyne* counseled against granting *Alleyne* retroactive applicability on collateral review. *Verge*, 50 Kan. App. 2d at 594-98.

In short, we agree with the district court's determination that the holding in *Alleyne* cannot be applied retroactively to cases that were final when *Alleyne* was decided. Likewise, we agree that, for 60-1507 motions to be considered hereafter, *Alleyne*'s prospective-only change in the law cannot provide the exceptional circumstances that would justify a successive 60-1507 motion or the manifest injustice necessary to excuse the untimeliness of a 60-1507 motion. But given that the district court considered Kirtdoll's motion on the merits after hearing arguments, the more appropriate disposition

was to summarily deny the motion, rather than dismissing it. Nevertheless, that technicality is a distinction without a difference for Kirtdoll; his hard 50 life sentence remains intact.

Given our decision on the prospective-only nature of the *Alleyne* and *Soto* holdings, the remaining issues need not be addressed.

Affirmed.